IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MULCH MANUFACTURING, INC.,

      Plaintiff,

  v.

ADVANCED POLYMER SOLUTIONS,
LLC, et al.,

      Defendants.

Case No. 2:11-CV-0325
JUDGE EDMUND A. SARGUS, JR.
MAGISTRATE JUDGE TERENCE P. KEMP

## OPINION AND ORDER

This matter is before the Court on Defendants Advanced Polymer Solutions, LLC's and John M. Ryan's Motion to Dismiss Complaint for Want of Personal Jurisdiction and/or Improper Venue (Doc. 13). For the reasons that follow, Defendants' motion is **DENIED**.

## I. BACKGROUND

Plaintiff Mulch Manufacturing, Inc. ("Mulch") brings the instant action against Defendants Advanced Polymer Solutions, LLC ("APS") and John Ryan ("Ryan") with claims for violations of the Ohio Deceptive Trade Practices Act under Ohio Revised Code § 4165.01 *et seq.*, fraud, breach of contract, breach of fiduciary duty, and negligence.

Mulch is an Ohio corporation with its principal place of business and headquarters located in Reynoldsburg, Ohio. (Compl. ¶ 1.) Mulch also has a plant in Callahan, Florida. Mulch is "one of the largest producers of packaged mulch products in the United States . . . [it] harvests the raw materials, processes the mulch at several locations, packages it and distributes it to its customers." (*Id.* ¶ 7.) APS is a limited liability company organized under the laws of New York with its principal place of business in Port Washington, New York that "purports to

develop, manufacture and provide new and unique chemical formulations based on a specialized molecular bonding method called chemical grafting." (*Id.* ¶¶ 2, 8.) Ryan is an individual residing in Flushing, New York, and is the president of APS. (*Id.* ¶ 3.)

In the summer of 2006, Mulch and APS entered into an agreement for APS to develop a chemical formulation for a cost-effective fire retardant that would be applied to Mulch's mulch products to prevent or inhibit combustion. (*Id.* ¶ 11.) APS was to be paid $80,000 by Mulch to develop this formulation, which would then be owned by Mulch. (*Id.*)

Mulch paid APS $80,000 and "APS purportedly proceeded to develop a fire retardant formulation for Mulch." (*Id.* ¶ 12.) According to Mulch, APS and Ryan represented to Mulch that APS had developed this formulation in-house. (*Id.*) Mulch evaluated and tested the formulation to determine whether it was effective and met Mulch's needs. The formulation APS provided to Mulch "was going to cost about nine times more than APS and Ryan had originally represented to Mulch Manufacturing it would cost." (*Id.* ¶ 13.) After receiving the formulation, Mulch obtained quotes from other companies to produce the fire retardant pursuant to the formulation provided by APS and Ryan, and found that APS's pricing was much cheaper to make the fire retardant than any other supplier or other scenario. (*Id.* ¶ 14.) Mulch ultimately purchased the fire retardant from APS along with "binders" (used to adhere the fire retardant to the mulch product) and drums (used to carry the fire retardant) from 2006 to 2010 at a cost of approximately $722,000. (*Id.* ¶ 15.)

Mulch claims that over the course of the parties' relationship, repeated representations were made to Mulch that APS had developed, and later manufactured, the fire retardant formulation. (*Id.* ¶ 16.) Mulch alleges that sometime in late 2009 or 2010, "after being tipped off by reviewing a bill of lading related to one of APS's shipments, [it] learned for the first time that the flame retardant product being supplied by APS was actually a product produced by

2

Spartan Flame Retardants, Inc. ("Spartan"). (*Id.* ¶ 17.) Mulch claims that all of the flame retardant product sold by APS to Mulch, and that APS and Ryan represented was developed and manufactured in-house at APS, "was—in fact—a product that APS had acquired from Spartan." (*Id.*) Mulch also claims that the formulation that APS and Ryan provided to Mulch did not perform as promised, thus hurting Mulch's credibility and causing lost sales and profitability of the product line that required the fire retardant. (*Id.* ¶ 18.)

Mulch filed this action on April 15, 2011. APS and Ryan then moved for dismissal of the claims against them based on lack of personal jurisdiction and/or improper venue.

## II. DISCUSSION

### A. Personal Jurisdiction

APS and Ryan collectively contend that, pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(c), this Court lacks personal jurisdiction over them. A court may have either personal or general jurisdiction over a defendant. Personal jurisdiction is present "when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985). General jurisdiction, on the other hand, is present "[w]hen a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum." *Helicopteros*, 466 U.S. at 415 n.9; *see also Burger King*, 471 U.S. at 473. Here, the parties do not dispute that general jurisdiction does not exist in this case. Therefore, the Court must determine whether personal jurisdiction is present.

To decide whether personal personal jurisdiction exists, the Court considers two factors: (1) whether Ohio's long-arm statute "authorize[s] the exercise of jurisdiction over [the] Defendants"; and (2) whether the "exercise of that jurisdiction comports with constitutional due

3

process." *Air Prods. And Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007). Ohio's long-arm statute is set forth in Ohio Revised Code § 2307.382, which authorizes personal jurisdiction over a person in certain circumstances. Mulch contends that two circumstances under the statute are applicable here: (1) § 2307.382(A)(1) "[t]ransacting any business in the state"; and (2) § 2307.382(A)(6) "[c]ausing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state." The Sixth Circuit in *Southern Machine Co. v. Mohasco Industries, Inc.* established the following three-part analysis for evaluating due process in the context of personal jurisdiction challenges:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

401 F.2d 374, 381 (6th Cir. 1968); *see also Air Prods.*, 530 F.3d at 550; *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005).

"[P]urposeful availment is something akin to a deliberate undertaking to do or cause an act or thing to be done in [the forum state] or conduct which can be properly regarded as a prime generating cause of the effects resulting in [the forum state], something more than a passive availment of [the forum state's] opportunities." *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 478 (6th Cir. 2003) (internal quotations and citation omitted). Personal jurisdiction is appropriate when a defendant purposely avails himself of the forum because the defendant "manifestly has availed himself of the privilege of conducting business [in the forum], and because his activities are shielded by the 'benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that

4

forum as well. *Burger King*, 471 U.S. at 476. "If a plaintiff can demonstrate purposeful availment, the absence of physical contacts with the forum state will not defeat personal jurisdiction over a non-resident defendant." *Bridgeport Music*, 327 F.3d at 479.

The plaintiff bears the burden of establishing a court's personal jurisdiction over a defendant. *Mich. Nat'l Bank v. Quality Dinette, Inc.*, 888 F.2d 462, 466 (6th Cir. 1989). This burden is "relatively slight." *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988). In deciding whether personal jurisdiction over a defendant exists, it is within a court's discretion to hold a hearing or rely on affidavits and the factual allegations of the pleadings without holding a hearing. *Mich. Nat'l Bank*, 888 F.2d at 466. If a court chooses not to hold a hearing, it must review the pleadings and affidavits in the light most favorable to the plaintiff, may not weigh contradictory evidence, and the plaintiff need only make a prima facie showing of personal jurisdiction. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000); *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). Here, although Mulch has requested a hearing, the Court is satisfied that the record before it, along with the allegations of the complaint and affidavits submitted by the parties, are sufficient to render a decision.

The complaint alleges that Mulch is an Ohio corporation with its principal place of business located in Reynoldsburg, Ohio. (Compl. ¶ 1.) Mulch also has a plant in Callahan, Florida and had a colorant operation in Madison, Florida. (Spencer Aff. ¶ 3.) The complaint further alleges that, despite APS being a limited liability company organized under New York law with its principal place of business in Port Washington, New York, it contracted with Mulch to supply goods and services in Ohio through Ryan, conducted business in Ohio, and committed tortious acts in and toward Mulch in Ohio. (Compl. ¶¶ 2, 5.)

Mulch has submitted an affidavit of its CEO, John Spencer ("Spencer"), in support of its opposition to Defendants' motion to dismiss for lack of personal jurisdiction. In the affidavit,

Spencer avers, *inter alia*, that (1) on July 18, 2006, Mulch entered into an agreement with APS; (2) Spencer negotiated this agreement on behalf of Mulch from Spencer's office in Ohio with APS's president, Ryan; (3) during the negotiations, Ryan sent numerous emails to Spencer in Ohio and had numerous telephone conversations with Spencer while Spencer was in Ohio, all of which involved negotiation of the contract terms; and (4) Spencer executed the agreement on behalf of Mulch in Ohio. (*See* Spencer Aff. ¶ 4.) Spencer further avers that over the course of their nearly four-year business relationship, Spencer and Ryan had many telephone and email communications while Spencer was in Ohio. (*See* Spencer Aff. ¶ 8.)

APS has also submitted an affidavit of its president, Ryan, in support of its motion for dismissal, which contests the accuracy of Spencer's statements concerning his role with Mulch. In the affidavit, Ryan avers, *inter alia*, that (1) John Stott ("Stott") of Mulch approached Ryan in 2006 to discuss the possibility of entering into a business relationship by which APS would develop a fire retardant that would be applied to Mulch's products; (2) Stott represented to Ryan that he worked for Mulch in or around Jacksonville, Florida; (3) Stott visited APS's New York headquarters prior to Mulch and APC executing the agreement; (4) all negotiations between Mulch and APS occurred in New York and Florida; (5) while negotiating the contract, no APS employees, including Ryan, visited Ohio and no APS employees negotiated with anybody who was located in Ohio; and (6) Ryan executed the agreement on behalf of APS in New York. (*See* Ryan Aff. ¶¶ 18–19; Ryan Supp. Aff. ¶¶ 3–5.) Ryan further avers that during the course of Mulch and APS's business relationship, Stott remained his primary contact at Mulch, and that neither APS nor Ryan knew that Mulch was an Ohio corporation until Mulch filed its complaint in this action. (Ryan Supp. Aff. ¶ 6, 23.)

Though there are several factual disputes between Spencer's and Ryan's affidavits, they must be resolved in favor of Mulch for purposes of deciding Defendants' jurisdictional

challenge. In construing the record in favor of Mulch, the Court concludes that Mulch has met its relatively slight burden of making a prima facie showing that this Court has personal jurisdiction over APS and Ryan.

Turning first to Ohio's long-arm statute, Ohio courts are deemed to have personal jurisdiction over a person "as to a cause of action arising from the person's . . . "[t]ransacting any business in" Ohio or from the person's "[c]ausing tortious injury in [Ohio] to any person by an act outside [Ohio] committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in [Ohio]." Ohio Rev. Code § 2307.382(A)(1) & (6). The complaint sufficiently alleges that APS, through Ryan, transacted business within Ohio and outside Ohio that caused injury within the state. Moreover, while APS's president, Ryan, avers in his affidavit that neither APS nor Ryan knew that Mulch was an Ohio corporation until Mulch filed its complaint in this case, Mulch's CEO, Spencer, avers in his affidavit that Ryan had knowledge of Mulch's headquarters in Ohio. (*See* Spencer Aff. ¶ 7.) According to Spencer, the purchase order was issued from Ohio and clearly identified Mulch's Ohio address. (*Id.*) Spencer further avers that at one point, Ryan accidentally listed Mulch's Ohio address for a shipment and Spencer had to remind Ryan that the product was to be shipped to Mulch's plan in Florida rather than its headquarters in Ohio. (*Id.*) Moreover, all shipments were billed to and paid from Mulch's headquarters in Ohio. (*Id.*) In construing the record and resolving any factual disputes in favor of Mulch, it appears that APS and Ryan knew that Mulch was an Ohio corporation, transacted business with an Ohio corporation, and caused tortious injury to an Ohio corporation. Thus, the requirements of Ohio's long-arm statute are satisfied.

Additionally, the requirements of due process would not be offended by the Court's exercise of personal jurisdiction over the Defendants. With regard to the first element of the *Southern Machine* test, APS contends that it did not purposely avail itself to the privilege of

7

acting in Ohio. *See Calphalon Corp.*, 228 F.3d at 721 ("The purposeful availment prong of the *Southern Machine* test is essential to a finding of personal jurisdiction."). In support of this argument, APS posits that it is a limited liability company organized under New York law with its principal place of business in Port Washington, New York; it has no employees, officers, facilities, or offices in Ohio; it has never had a place of business in Ohio; it is not licensed to do business in Ohio; it does not have an agent for service of process in Ohio; it does not own, rent, lease, or control any property in Ohio; it has never advertised in Ohio; it has never brought suit in Ohio; it has never paid state or local taxes in Ohio; no APS employees have ever traveled to Ohio to conduct business on behalf of APS; and APS does not have any active contracts with any known Ohio companies. (*See* Ryan Aff. ¶¶ 5–14.) However, APS's lack of physical contacts with Ohio is not dispositive. The purposeful availment requirement is satisfied when a defendant avails itself "of the privilege of acting in the forum state *or* causing a consequence in the forum state." *Health Care Indus., Inc. v. Logan Park Care Ctr., Inc.*, 573 F. Supp. 360, 362 (S.D. Ohio 1983) (emphasis in original). A "consequence" in the forum state includes "effects on the 'general conduct of business' in Ohio which 'may not be readily quantifiable,' but are 'nonetheless real.'" *Id.* at 363. "If a plaintiff can demonstrate purposeful availment, the absence of physical contacts with the forum state will not defeat personal jurisdiction over a non-resident defendant." *Bridgeport Music*, 327 F.3d at 479 (citations omitted).

Indeed, the Sixth Circuit has held that "[i]f, as here, a nonresident defendant transacts business by negotiating and executing a contract via telephone calls and letters to an Ohio resident, then the defendant has purposefully availed himself of the forum by creating a continuing obligation in Ohio." *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998) (citations omitted). "Furthermore, if the cause of action is for breach of that contract, as it is here, then the cause of action naturally arises from the defendant's activities in Ohio." *Id.* Here, APS

8

contracted with an Ohio-based company and its actions allegedly caused tortious injury to Mulch in Ohio. Mulch alleges that APS's actions hurt Mulch's credibility and caused lost sales and profitability. APS's actions allegedly directly impacted Mulch's economic and business interests. According to Spencer's affidavit, Ryan negotiated the terms of the contract via telephone and email with Spencer while he was located in Ohio (Spencer Aff. ¶ 4.), which created a continuing obligation in Ohio.

Under the second prong of the *Southern Machine* test, the claim for relief against APS and Ryan must arise out of their activities in Ohio. *See Southern Mach.*, 401 F.2d at 381 (referred to as the "arising from" element). A claim for relief can be of whatever type, as long as it has "a substantial connection with the defendant's in-state activities." *Id.* at 384 n.27. "Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contact." *Id.* at 384 n.29 (citations omitted). The Sixth Circuit has also stated that a "lenient standard . . . applies when evaluating the 'arising from' criterion." *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002).

This element is met in the instant action because the claims for relief alleged by Mulch against APS are "related to [APS's] contact with the state" of Ohio. *Southern Mach.*, 401 F.2d at 384 n.29. Mulch brought claims against APS and Ryan alleging that they committed violations of Ohio's Deceptive Trade Practices Act by, including among other things, making repeated representations that APS had developed and later manufactured the fire retardant formulation that was actually acquired from another company, hurting Mulch's credibility, and causing lost sales and profitability of Mulch's product line that required the fire retardant. All of these alleged actions relate to APS's contract with Mulch, *i.e.*, APS's contact with an Ohio company.

The final element under the *Southern Machine* test requires the Court to determine whether "the acts of [APS] or consequences caused by [APS] have a substantial enough

9

connection with the forum state to make the exercise of jurisdiction over [it] reasonable." *Southern Mach.*, 401 F.2d at 381. This element exists because "minimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities." *Nationwide Mut. Ins. Co. v. Tamariz-Wallace*, No. C2-08-1148, 2009 WL 1850612, at *5 (S.D. Ohio June 19, 2009) (citing *Burger King*, 471 U.S. at 477–78). "'In considering whether the exercise of jurisdiction is reasonable, the court should consider, amongst others, the following factors: (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the policy.'" *Id.* (quoting *Air Prods.*, 503 F.3d at 554–55).

The issue here presents a closer call than those presented in the analysis thus far. For starters, being haled into court in Ohio no doubt creates a burden on APS and Ryan. Ryan avers in his affidavit that neither APS nor he knew that Mulch was an Ohio corporation until Mulch filed its complaint in this action and that no APS employees have traveled to Ohio to conduct business on behalf of APS. (Ryan Aff. ¶ 14, 23.) While the Court does find this relevant as it relates to the concept of fair play and substantial justice, the final inquiry turns on whether the forum state has an interest in resolving the conflict at issue. Once the first two questions have been answered in the affirmative, as they have been here, "resolution of the third involves merely fettering out the unusual cases where that interest cannot be found." *Southern Mach.*, 401 F.2d at 384. Even where it would undoubtedly burden a defendant to defend itself in a foreign state, "when minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Youn v. Track, Inc.*, 324 F.3d 409, 420 (6th Cir. 2003). As explained above, APS purposefully availed itself of Ohio and allegedly committed tortious injury to Mulch, which it

10

felt within Ohio. Further, Mulch has an interest in obtaining relief in Ohio and Ohio certainly has an interest in providing a forum for one of its corporations. Therefore, this is not one of the "unusual cases" where it can be said that Ohio does not have an interest in resolving this dispute.

The essence of this portion of the parties' dispute is straightforward—either the Ohio corporation has its claims heard in Ohio, or in New York, or perhaps in Florida. Conversely, the New York limited liability company could have its claims heard in Ohio, New York, or Florida. In either scenario, one or the other parties are inconvenienced, a situation impossible to avoid. So long as both due process and O.R.C. § 2307.382 are satisfied, Mulch has established that this Court has personal jurisdiction over the Defendants.

Accordingly, when viewing the pleadings and affidavits in a light most favorable to Mulch, the Court concludes that Mulch has met its relatively slight burden of making a prima facie showing that personal jurisdiction exists over APS and Ryan. The Court **DENIES** Defendants' motion to dismiss for lack of personal jurisdiction.

## B. Venue

In the alternative to their motion to dismiss for lack of personal jurisdiction, the Defendants move to dismiss for improper venue for the same reasons that the Court cannot exercise personal jurisdiction over APS and Ryan. In a civil action brought pursuant to diversity jurisdiction, venue is proper in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no other district in which the action may be brought.

11

28 U.S.C. § 1391(a). Defendants contend that they do not reside in Ohio, that "no part, much less a substantial part, of the alleged events or omissions giving rise to Mulch's claims occurred in Ohio," and that they "are not subject to personal jurisdiction in Ohio." (Def's Mot. To Dismiss at 11.) This argument, however, fails for the same reasons that the Court found it insufficient to defeat personal jurisdiction over APS and Ryan. Accordingly, the Court **DENIES** Defendants' motion to dismiss for improper venue.

### III. CONCLUSION

Based on the foregoing, Defendants APS and Ryan's Motion to Dismiss Complaint for Want of Personal Jurisdiction and/or Improper Venue (Doc. 13) is **DENIED**.

**IT IS SO ORDERED.**

2-27-2012
**DATED**

EDMUND A. SARGUS, JR.
**UNITED STATES DISTRICT JUDGE**